IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN HOGAN and OCEANA ORTH,<br><br>      Plaintiffs,<br><br>    v.<br><br>BOROUGH OF BRENTWOOD, CARL RECH, as an individual, FARRELL WAGNER, as an individual, ANDREW TOTH, as an individual, STEPHANIE CHUPKA, as an individual, DANIEL JENA, as an individual, RONALD SEPIC, JR., as an individual, FNU CATANZARO, as an individual, and FNU ROURKE, as an individual,<br><br>      Defendants. | 2:19-cv-1016-NR |

## OPINION

      Plaintiffs Kristen Hogan and Oceana Orth bring this suit as the result of an allegedly unconstitutional search and seizure. Plaintiffs allege that Defendants Officer Carl Rech, Agent Andrew Toth, Officer Farrell Wagner, Officer Daniel Jena, and Officer Ronald Sepic, Jr. (collectively, the "Individual Defendants")[1] entered Ms. Hogan's home without a valid search warrant. They say the warrant the Individual Defendants obtained was not properly supported by probable cause. Additionally, according to Plaintiffs, when the Individual Defendants executed their warrant, Officer Jena pushed Ms. Hogan into her front door as he entered. Ms. Hogan says that the force of that push caused her head to come into "forceful contact" with the glass panes on the front door, resulting in a concussion.

      The Individual Defendants tell a different story. They were part of a narcotics investigation task force overseen by the Pennsylvania Office of Attorney General that

---

[1] Plaintiffs have withdrawn their claims against Defendants Stephanie Chupka, FNY Catanzaro, and FNU Rourke. ECF 81, p. 1 n.1.

- 1 -

was investigating Raymond Erfort, a suspected cocaine trafficker. During that investigation, the task force arrested Mr. Erfort and searched his home, vehicle, and bank accounts. While searching his vehicle, the task force recovered several financial documents, including two checks and an insurance policy. One of the checks and the insurance policy were linked to businesses owned by Ms. Hogan. One of those businesses had Ms. Hogan's home listed as its address. After continuing to investigate, the task force uncovered additional connections between Ms. Hogan and Mr. Erfort. Based on this information, the task force obtained a warrant to search Ms. Hogan's home for evidence of money laundering. The Individual Defendants claim this warrant was supported by probable cause and that they acted appropriately while executing it.[2]

Based on these core facts, Plaintiffs bring claims under 42 U.S.C. § 1983 for unlawful search and seizure, excessive force, and violation of their equal-protection rights. They also bring a *Monell* claim against the Borough of Brentwood because at the time of the search and seizure, several of the Individual Defendants were members of the Brentwood Police Department who were assigned to work for the Attorney General's task force. Plaintiffs allege that Brentwood failed to appropriately train these officers about probable-cause determinations before their assignment, and that this failure led to the alleged constitutional violations.

Defendants now move for summary judgment on all of Plaintiffs' claims. Applying the familiar standard of Federal Rule of Civil Procedure 56,[3] the Court will

---

[2] The search ultimately proved fruitless—the officers and agents found no evidence connecting Plaintiffs to Mr. Erfort. In the end, Plaintiffs were not arrested or charged with any criminal offense in connection with the search or the investigation into Mr. Erfort's suspected drug-dealing activity.

[3] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or

grant summary judgment in part and deny it in part as to the Individual Defendants. The Court will grant Brentwood's motion in full.

## **DISCUSSION & ANALYSIS**

Plaintiffs bring two types of claims in this case: claims related to the warrant (counts I, II, and III of the second amended complaint) and an excessive-force claim (count IV).

With respect to the warrant claims, they all fail as a matter of law. Plaintiffs have not offered sufficient evidence to overcome the presumption that probable cause supported the warrant issued by a neutral magistrate. And since there is no underlying unconstitutional search and seizure, Brentwood cannot be derivatively liable under *Monell*. Plaintiffs' equal-protection claim also fails, since there was a rational basis for the officers to target Plaintiffs, as opposed to another commercial entity.

With respect to the excessive-force claim, the Court finds that there are material disputes of fact that preclude summary judgment, and that Ms. Hogan's claim against Officer Jena is otherwise not barred by the statute of limitations.

The Court more thoroughly addresses the respective claims, in turn, below.

---

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

I.   **The claims related to the warrant fail.**

   A.   **The Individual Defendants are entitled to summary judgment on Plaintiffs' unlawful search-and-seizure claim.**

Plaintiffs allege that they were subject to an unlawful search and seizure when the Individual Defendants entered Ms. Hogan's home under a judicially approved search warrant. ECF 43, ¶¶ 64-78. According to Plaintiffs, this warrant was defective because it "lacked any *indicia* of probable cause." ECF 81, p. 3 (emphasis in original). The Individual Defendants, on the other hand, claim they are entitled to summary judgment because the "record fails to reflect any evidence which would support the conclusion that the affidavit…lacked sufficient indicia of probable cause." ECF 75, p.16. The Court agrees with the Individual Defendants.

"The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, 409 (W.D. Pa. 2015) (Cercone, J.) (cleaned up). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant," as is the case here, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up). That said, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* at 547. "The shield of immunity otherwise conferred by the warrant will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (cleaned up).

This standard sets a high bar that is not easy to clear. *See id.* Indeed, it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or

those who knowingly violate the law." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). When evaluating whether this high bar has been cleared, the Court must focus "on the information the officers had available to them, not on whether the information resulted from exemplary police work." *Id.* Meaning that, here, "[e]ven if, in hindsight, the affidavit to search the house might have been somewhat questionable," that will not be enough. *Handy v. Palmiero*, No. 17-3107, 2019 WL 3973711, at *7 (E.D. Pa. Aug. 22, 2019) (cleaned up), *aff'd,* 836 F. App'x 116 (3d Cir. 2020). "[T]he Fourth Amendment does not require perfection." *Id.*

Applying this standard, the Court finds that the warrant did not lack any indicia of probable cause. The undisputed material evidence reveals that documents recovered from Mr. Erfort's vehicle established a connection between Mr. Erfort and businesses owned by Ms. Hogan. ECF 74-1, PDF p. 29. One of those businesses had Ms. Hogan's home as its address. *Id.* The task force also obtained a report from a confidential law enforcement database ("CLEAR") that confirmed a connection between Mr. Erfort and Ms. Hogan. ECF 74-2, Ex. J-7; ECF 74-3, 22:12-22. Based on this information and his years of experience in narcotics investigations, Officer Rech, who applied for the warrant, believed that Ms. Hogan was involved in Mr. Erfort's efforts to launder money obtained through his alleged drug-dealing activity. *E.g.*, ECF 74-2, Ex. J-7; ECF 74-3, 24:15-20, 36:15-24. A neutral magistrate found this information sufficient to establish probable cause.[4]

This magistrate approval is critical because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form

---

[4] Plaintiffs do not allege that any statements in the probable-cause affidavit were false, and therefore there is no genuine dispute of fact created by the contents of the probable-cause affidavit submitted to the magistrate.

with the requirements of the Fourth Amendment." *Messerschmidt*, 565 U.S. at 547 (cleaned up). And based on the above facts, Plaintiffs cannot establish that the warrant to search their home was so baseless that "no reasonably competent officer would have concluded that a warrant should not issue." *Id.*

The Court will therefore grant summary judgment for the Individual Defendants on Plaintiffs' illegal-search-and-seizure claim in count I of the second amended complaint.

### B. Plaintiffs' failure-to-train claim against Brentwood fails.

Relatedly, Plaintiffs bring a *Monell* claim against Brentwood based on its "failure to train [its] officers in the necessary procedures regarding constitutional searches and seizures in investigations relating to drug activities." ECF 80, p. 6. According to Plaintiffs, because of this failure to train, Officer Rech's warrant "lacked the requisite probable cause" and "resulted in a constitutionally deficient investigation and an illegal search and seizure, conducted by both [Officers] Rech and Wagner." *Id.* Importantly, however, if Plaintiffs have "not first established a violation by an individual, then there can be no derivative claim against the municipality." *D.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636, 662 (W.D. Pa. 2019) (Horan, J.) (citation omitted).

As discussed above, Plaintiffs failed to establish a violation stemming from the search and seizure conducted by Officers Rech and Wagner, and they have offered no argument or evidence to support a claim for failure to train on the use of force.[5] *See* ECF 80, pp. 2-7. Therefore, Plaintiffs' claim against Brentwood necessarily fails. *See Chilcott v. City of Erie*, No. 20-289, 2021 WL 4479505, at *7 (W.D. Pa. Sept. 30, 2021) (Baxter, J.) ("A *Monell* claim against a municipality will not lie where, as here, a

---

[5] Officer Jena is the lone Individual Defendant alleged to have used excessive force and his name does not appear anywhere in Plaintiffs' brief in opposition to Brentwood's motion. *See generally* ECF 80.

plaintiff suffered no constitutional injury at the hands of an individual police officer." (cleaned up)); *Bonasorte v. City of Pittsburgh*, No. 18-243, 2019 WL 1593720, at *6 (W.D. Pa. Apr. 15, 2019) (Fischer, J.) (finding that plaintiffs "*Monell* claim must also be dismissed because they have failed to plead an underlying violation of their constitutional rights" (citations omitted)).[6]

### C. The Individual Defendants are entitled to summary judgment on Plaintiffs' equal-protection claim.

Plaintiffs also claim that the Individual Defendants violated their equal-protection rights under the Fourteenth Amendment because they were treated differently than Three Rivers Property Management, LLC without a rational basis. ECF 81, p. 13. Plaintiffs argue that Three Rivers was also implicated as having a connection to Mr. Erfort through a check found in his vehicle, yet the Individual Defendants did not pursue a search of Three Rivers's property. *Id.* The Individual Defendants counter that the record reflects a rational explanation for the different treatment, and therefore Plaintiffs' claim fails. ECF 75, pp. 29-35. The Court again agrees with the Individual Defendants.

"The Equal Protection Clause of the Fourteenth Amendment requires that all people similarly situated be treated alike." *Kokinda v. Pa. Dep't of Corr.*, No. 16-1580, 2017 WL 3897378, at *8 (W.D. Pa. Aug. 9, 2017) (Eddy, M.J.). Where, as here, the plaintiff is proceeding as a "class of one," rather than as a member of a suspect or quasi-suspect class, there are three elements to the claim: "(1) the defendant treated [the plaintiff] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for difference in treatment." *Hill v.*

---

[6] There's also no evidence in the record to support a failure-to-train claim. For example, Plaintiffs do not point to any prior instances of the alleged unlawful conduct. *See McCall v. City of Phila.*, 396 F. Supp. 3d 549, 561 (E.D. Pa. Aug. 30, 2019) (holding that the plaintiffs could not prove that the city engaged in deliberate indifference because the plaintiffs alleged no previous patterns of alleged illegality).

*Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).  Because the last element is dispositive, the Court will focus its analysis there.

"Rational basis review is a very deferential standard. It is met if there is any reasonably conceivable state of facts that could provide a rational basis for the differing treatment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (cleaned up).  "The threshold for a government action to meet this standard is extremely low and can be met even where the government action is based on rational speculation unsupported by evidence or empirical data." *Hewlette-Bullard on behalf of J.H-B. v. Pocono Mountain Sch. Dist.*, 522 F. Supp. 3d 78, 101 (M.D. Pa. 2021) (cleaned up).  In other words, to be actionable, the different treatment here must be "irrational and wholly arbitrary." *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, No. 18-87, 2018 WL 3997124, at *2 (W.D. Pa. Aug. 21, 2018) (Conti, J.), *aff'd*, 785 F. App'x 46 (3d Cir. 2019).  Plaintiffs have failed to meet their heavy burden of showing that the Individual Defendants had no rational justification for obtaining a search warrant for Ms. Hogan's home, but not for the Three Rivers property.

The record establishes that there were several key differences that guided the officers' decision-making and justified the different approaches.  First, the officers searching Mr. Erfort's vehicle only recovered one check tied to Three Rivers, unlike the check and insurance policy that were both connected to Ms. Hogan.  ECF 74-3, 6:19-7:4.  Second, Officer Rech testified that because Ms. Hogan had "two different companies related to her address," that "drew" the officers to her. *Id.* at 25:24-25:10.  By contrast Three Rivers only had one address connected with it, and appeared to have a commercial "base of operations." *Id.* at 54:14-55:8.  None of these facts are disputed.  And based on these differences, the officers possessed a rational basis to obtain a search warrant for Plaintiffs' residence rather than the Three Rivers commercial property. *Id.* at 28:11-23.

Viewing the record in full, no reasonable jury could find that the Individual Defendants' actions were completely unmoored from a rational decision-making process. Thus, Plaintiffs' equal-protection claim must fail. *See, e.g., Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 901 (E.D. Pa. 2017) (finding that plaintiff's section 1983 claim failed "as a matter of law, because he [could not] demonstrate that there [was] no rational basis for his difference in treatment under the very high standard required in the context of police decisions"); *Hewlette-Bullard*, 522 F. Supp. 3d at 102 ("Upon consideration of the record evidence and the parties' arguments, the court will grant Defendants' motion for summary judgment with respect to the equal protection claim because there were multiple rational reasons for treating [plaintiff's son] differently from the other student who had purportedly threatened a school shooting.").[7]

## II. The excessive-force claim survives and should be submitted to a jury.[8]

### A. There are material disputes of fact about whether Officer Jena used excessive force against Ms. Hogan.

In addition to the warrant-related claims, Ms. Hogan alleges that Officer Jena used excessive force when he allegedly shoved her into her front door, causing her to

---

[7] Although the Court need not reach the issue, it has doubts that Plaintiffs are "similarly situated" to Three Rivers, which would also defeat their equal-protection claim. "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (cleaned up). The search warrant for Plaintiffs' property was directed to a private residence, while the Three Rivers address was commercial. In other contexts, commercial property is generally considered materially different from residential property for purposes of an equal-protection analysis. *See, e.g., Crider v. Bd. of Cnty. Comm'rs of Cnty. of Boulder*, 246 F.3d 1285, 1288-1289 (10th Cir. 2001) (finding that individual property owners were not similarly situated to commercial property owners).

[8] Plaintiffs clarified in their briefing that only Ms. Hogan has an excessive-force claim, and she is only bringing that claim against Officer Jena. ECF 81, p. 9.

suffer a concussion and other injuries. ECF 81, pp. 9-10. Officer Jena, for his part, disputes this account. ECF 75, pp. 21-29. He claims that, at most, he made incidental contact with Ms. Hogan and that she never sustained any injuries. *Id.* at p. 28. On the record presented, there are too many material disputes of fact for the Court to resolve, making summary judgment inappropriate.

A plaintiff may bring a claim under section 1983 when a law-enforcement officer uses force so excessive that it violated the Fourth Amendment's protection from unreasonable search and seizure. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995). "When determining the reasonableness of an allegedly excessive use of force, the standard is whether the police officer's actions were objectively reasonable in light of the facts and circumstances, regardless of the officer's intent or motivation." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (cleaned up). In applying this standard, the Court should "consider factors including the severity of the crime at issue, whether the suspect[] poses an immediate threat to the safety of the officers or others, and whether [the suspect is] actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up). The Court should "also assess the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* (cleaned up).

Many of the circumstances of the incident are largely undisputed. Ms. Hogan testified at her deposition that Officer Jena "struck" her with a "black box" he was holding while she was standing in the vestibule outside of her front door and cradling her dog. ECF 74-8, 31:3-13. Officer Jena admits that he may have "bumped" her on his way through the door. ECF 74-6, 53:3-54:10. None of the Individual Defendants testified that they felt threatened by Ms. Hogan, who was not armed, or claimed that

Ms. Hogan was trying to flee. Everyone agrees that the crime being investigated was money laundering, which is a nonviolent offense.

The only real dispute between the parties is the degree of force of Officer Jena's contact with Ms. Hogan. On this point, Ms. Hogan claims Officer Jena hit her hard enough to cause the back of her head to strike her front door, causing a concussion. ECF 74-8, 31:3-32:17, 46:8-21. Officer Jena disputes that Ms. Hogan hit her head or that she was injured in any way. ECF 74-6, 55:13-56:10. The Court does not get to pick whom to believe here. The degree of force and its appropriateness given the circumstances of the search is for a jury to decide. *See, e.g.*, *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) ("The reasonableness of the use of force is normally an issue for the jury."); *Faust v. Clee*, No. 03-1346, 2006 WL 3025960, at *3 (E.D. Pa. Oct. 23, 2006) ("Whether an officer's actions constitute excessive force is a reasonableness inquiry usually sent to the jury." (citation omitted)). And construing the relevant facts in Ms. Hogan's favor, a reasonable jury could conclude that Officer Jena used excessive force, considering the overall circumstances of the search.

To convince the Court that no disputes of material fact exist, Officer Jena argues that the Court should not credit Ms. Hogan's testimony because a video of the incident allegedly "contradicts her version of events." ECF 87, p. 6. That is, Officer Jena claims that the video does not show the back of Ms. Hogan's head making "contact with the glass part of the door." ECF 75, p. 27. But in making this argument, Officer Jena admits that the video is "not complete." ECF 87, p. 6. After carefully reviewing the video, the Court agrees with that assessment, and finds that the video does not tell the whole story.

For one thing, the view of the key part of the interaction is almost totally obscured. The door is closed, and there is a large decoration covering most of the window. ECF 74-2, Exh. J-10. As a result, the Court cannot definitively say that the video contradicts Ms. Hogan's version of events. The jury will need to decide how to

interpret what is depicted in the video and whether it tracks the version of events described by the material witnesses. *See Abney v. Younker*, No. 13-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019) ("[W]here a video has inherent ambiguities, courts have declined invitations to grant summary judgment based upon that video evidence." (cleaned up)).

For these reasons, the Court will not enter summary judgment on the merits of Ms. Hogan's excessive-force claim against Officer Jena.

### B. Ms. Hogan's excessive-force claim is not barred by the applicable statute of limitations.

Despite the material disputes of fact outlined above, Officer Jena argues that he is nevertheless entitled to summary judgment on the excessive-force claim because it is barred by the applicable statute of limitations. ECF 75, pp. 17-21. The Court disagrees.

"Actions brought under [section] 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." *Larsen v. State Emps. Ret. Sys.*, 553 F. Supp. 2d 403, 415 (M.D. Pa. 2008) (cleaned up). "Pennsylvania law provides a two-year statute of limitations." *Retter v. Douglas*, No. 12-792, 2014 WL 992834, at *7 (W.D. Pa. Mar. 13, 2014) (Cercone, J.) (citing 42 Pa.C.S. § 5524).

Generally, a complaint must be filed within the time limits established by the statute of limitation, measured from the time the cause of action accrues. *Runkle v. Pa. Dep't of Corr.*, No. 13-137, 2013 WL 6485344, at *4 (W.D. Pa. 2013) (Kelly, M.J.). "The date of accrual for claims brought under [s]ection 1983 is governed by federal law." *Id.* Under that approach, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury [that] is the basis of the section 1983 action." *Id.* (cleaned up).

Given the nature of the incident, Plaintiffs' claims accrued on the date of the search of their residence, December 14, 2017. *See Richardson v. Barbour*, No. 18-1758, 2020 WL 4815829, at *8 (E.D. Pa. Aug. 19, 2020) ("Here, the date of accrual is [i]ndisputably the incident date[.]"). This means that to be timely, Plaintiffs needed to file those claims by no later than December 14, 2019. Plaintiffs filed their initial *pro se* complaint on August 15, 2019—almost four months before the deadline. ECF 1-1. Officer Jena was not named as a defendant in that complaint, however. *See id.* In fact, Officer Jena wasn't officially named as a defendant until Plaintiffs secured counsel and then filed the second amended complaint on March 19, 2020. ECF 43. Officer Jena believes that this timeline dooms Ms. Hogan's excessive-force claim against him. But that's not true. Ms. Hogan argues that the filing of the second amended complaint should "relate back" to the date of her original pro se complaint under Federal Rule of Civil Procedure 15(c), making her claim against Officer Jena timely. ECF 81, pp. 7-9. The Court agrees.

Because Ms. Hogan's amendment "changes the party or the naming of the party against whom a claim is asserted, Rule 15(c)(1)(C) [applies]."[9] *Edwards v. Middlesex Cnty.*, No. 08-6359, 2010 WL 2516492, at *3 (D.N.J. June 14, 2010). Rule 15(c)(1)(C) has three requirements. First, the requirements of Rule 15(c)(1)(B) must be met." *Id.* (cleaned up). Rule 15(c)(1)(B) requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Second, the newly named defendant must have received notice of the action such that he will not be prejudiced in defending on the merits within the period provided by Federal Rule of Civil Procedure 4(m), i.e., [90] days from the filing of the original complaint." *Edwards*, 2010 WL 2516492, at *3 (cleaned up). Third, the newly named

---

[9] "In the Third Circuit, federal not state law controls questions of relation back." *Richardson*, 2020 WL 4815829, at *8 n.12 (citation omitted).

defendant must have known—or should have known—within the Rule 4(m) period, that but for a mistake about the proper party's identity he or she would have been named in the original complaint. *Id.* In analyzing these requirements, the Court must be mindful that Rule 15 is "construed liberally to support the principle that cases should be tried on the merits whenever possible." *Richardson*, 2020 WL 4815829, at *10 (citations omitted).

Officer Jena does not dispute that Ms. Hogan's excessive-force claim "arose out of the conduct, transaction, or occurrence" that is pled in Ms. Hogan's original complaint. Nor could he. All the claims here stem from the same search and seizure that occurred on December 14, 2017. Thus, the requirements of Rule 15(c)(1)(B) are met. That means only the second and third requirements under Rule 15(c)(1)(C) are at issue.

The second requirement, also known as the notice requirement, "does not require that the newly named defendant receive notice of the original complaint by service of process." *Edwards*, 2010 WL 2516492, at *4. Instead, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Id.* (quoting *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001)). Plaintiffs argue that notice should be imputed to Officer Jena through the "shared attorney method," which is "based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Garvin v. City of Phila.*, 354 F.3d 215, 222-23 (3d Cir. 2003) (cleaned up). Officer Jena argues that this method of imputing notice is unavailable because he "had no prior knowledge of [this] case until he received a copy of the complaint naming him as a defendant." ECF 87, p.3. The Court finds that on this limited record, notice can be imputed under the shared-attorney method.

There's no disputing that the same attorney represents the originally named Individual Defendants and Officer Jena—the Pennsylvania Attorney General represents them all. As a result, the "fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [90] day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Singletary*, 266 F.3d at 196-97. Prior to the 90-day notice period lapsing, the Attorney General's Office entered an appearance and answered the first amended complaint on behalf of Officer Toth. That amended complaint identified as one of the defendants an "officer unknown" who "assaulted Ms. Hogan" during the search of her residence. ECF 4, p. 8. ¶ 2. Officer Toth, through counsel, denied this allegation "as stated" and asserted an affirmative defense that "Plaintiffs were not deprived of any rights under the Fourth or Fourteenth Amendments." ECF 7. Based on these filings, it is reasonable to infer that to respond in this fashion, counsel would have investigated the identity of the "unknown officer" (*i.e.*, Officer Jena) and communicated with him about what happened during the search. *See Smith v. City of Phila.*, 363 F. Supp. 2d 795, 800-01 (E.D. Pa. 2005) (finding that counsel's discovery response identifying the unnamed defendants "gives rise to the inference" that he had notified them of the action).

To rebut this inference, Officer Jena relies only on his testimony that he hadn't talked to Officer Toth about the incident surrounding this case since Defendants "first got served with it." ECF 87, p. 3 (citing ECF 74-6, 83:1-14). This statement, however, fails to establish that Officer Jena knew nothing about a potential claim against him until he was served. Officer Jena did not say that he never communicated with his attorney about the case within the 90-day notice period; he only said that he had not spoken with Officer Toth about it until then. And counsel for Officer Jena did not submit a declaration stating that he had not communicated with Officer Jena during

the notice period. *Cf. Garvin*, 354 F.3d at 224-26 (upholding a district court's finding that notice of a lawsuit could not be imputed under the shared-attorney method where solicitor submitted a statement that she had not informed newly named individuals of the lawsuit).[10]  The evidence offered by Officer Jena therefore is not enough to definitively rebut the inference of notice under the shared-attorney method. *E.g.*, *Montanez v. York City*, No. 12-1530, 2014 WL 3534567, at *4 (E.D. Pa. July 16, 2014) (holding that even though a newly added defendant submitted an affidavit attesting that he did not have actual notice of a lawsuit, notice could be imputed under the shared attorney method); *Sacko v. Trs. of Univ. of Pa.*, No. 14-831, 2014 WL 5297992, at *2 n.1 (E.D. Pa. Oct. 15, 2014) (holding that even if "defense counsel argues [that the defendant] has never been informed that he might be named as a defendant in the lawsuit," the focus of the court's analysis is "on whether notice may be imputed to [the defendant] under the shared attorney … method[], not on what defense counsel claims they may or may not have told [the defendant].").[11]

---

[10] Of course, no such attorney declaration could have reasonably been filed because "a party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Swindell Dressler Int'l Co. v. Travelers Cas. & Sur. Co.*, 827 F. Supp. 2d 498, 506 (W.D. Pa. 2011) (Fischer, J.) (cleaned up).  In this case, to properly discharge that obligation, counsel would have needed to contact each officer involved in the incident, including Officer Jena, and instruct them to preserve any relevant evidence that they might have in their possession.  There's nothing in the record to suggest that counsel here failed to properly help Defendants discharge that preservation obligation, and the Court declines to assume such a failure.

[11] The Court also notes that even if it were undisputed that Officer Jena had not received constructive notice within the presumptive 90-day period, Ms. Hogan's excessive-force claim may still not be barred because it is likely that good cause exists to extend the Rule 4(m) service period. "The advisory committee's note to the 1991 amendment to Rule 15(c) contemplates that such an extension also extends the period in which notice of an action must be received for purposes of the relation back analysis, specifying that in allowing a name-correcting amendment within the time allowed by Rule 4(m), Rule 15(c) allows not only the [90] days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule.[]" *Lopez v. Bucks Cnty.*, No. 15-5059, 2016 WL 3612056, at *4

"[O]nce it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint." *Edwards*, 2010 WL 2516492, at *4. Officer Jena has not asserted that he has suffered **any** prejudice from the alleged delay in notice of the suit. And that makes sense. Presumably all information relevant to any defenses that he could raise was preserved by the parties before his formal addition to the case. Because Officer Jena suffered no apparent prejudice, any imputed notice that he received would be sufficient. See *Moreno v. City of Pittsburgh*, No. 12-615, 2013 WL 3816666, at *4 (W.D. Pa. July 22, 2013) (Fischer, J.) ("SWAT Defendants have not stated in any of their briefings why or how they would be prejudiced in defending against this matter. Upon the Court's review there appears to be no risk of same because Defendants' counsel has had access to any and all evidence regarding the allegations in the Second Amended Complaint throughout discovery[.]").

Finally, the third requirement for relation back is also met. That's because Officer Jena "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Plaintiffs alleged with specificity the events surrounding the search of their residence in the original complaint, including describing the "acts of excessive

---

(E.D. Pa. July 5, 2016) (cleaned up). In determining whether good cause exists, the Court must determine whether Plaintiffs offered "some reasonable basis for noncompliance within the time specified in the rules." *Id.* (cleaned up). Plaintiffs arguably have good cause for an extension of the deadline through the date they filed the second amended complaint naming Officer Jena. Plaintiffs, who at first appeared *pro se*, could have reasonably expected that they would have been able to learn Officer Jena's identity through initial disclosures. *See id.* Those disclosures were delayed, however, while the Court addressed Rule 12 motions and while Plaintiffs secured counsel. There is no suggestion that Ms. Hogan unreasonably delayed asserting her claim against Officer Jena once she learned the relevant information, which Defendants possessed all along.

force" against Ms. Hogan, and "only failed to identify the officer[] by name." *Moreno*, 2013 WL 3816666, at *4. It is also clear from the original complaint that Ms. Hogan "challenged the constitutionality of the acts taken by" Officer Jena. *Id.* Officer Jena was fully aware of his participation in the search of Ms. Hogan's home. Considering these facts, the Court finds that Rule 15(c)(1)(C)(ii) has been satisfied.

As a result, the Court will deny Officer Jena's motion for summary judgment based on the statute of limitations.

## CONCLUSION

For all these reasons, the Court will grant in part and deny in part the Individual Defendants' motion for summary judgment, and grant in full the Borough of Brentwood's motion. An appropriate order follows.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge